UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| VALVE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>ZAIGER, LLC, and JOHN DOE CORPORATION,<br><br>Defendants. | No. 2:23-cv-01819-JHC<br><br>DEFENDANT ZAIGER LLC'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS<br><br>**NOTING DATE: JANUARY 12, 2024** |
|---|---|

//

//

//

//

//

//

//

//

//

DEFENDANT ZAIGER LLC'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS
CAUSE NO. 2:23-cv-01819

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

4859-2426-4348, v. 1

## TABLE OF CONTENTS

ARGUMENT ........ 2

I. There Is No Personal Jurisdiction ........ 2

A. Retainer Agreements with Washington Clients Are Jurisdictionally Irrelevant ..... 3

B. The Arbitration Notice Did Not Create Any Contact with Washington ........ 4

II. Valve's Tortious Interference Claim Fails ........ 6

A. Zaiger Acted Within the Scope of Its Agency ........ 6

B. Valve Fails to Allege Any Breach of the SSA ........ 8

i. Zaiger's clients did not breach any obligation to engage in an informal resolution process ........ **Error! Bookmark not defined.**

ii. Zaiger's clients did not bring a "class" or "representative" "arbitration" **Error! Bookmark not defined.**

III. Valve's Abuse-of-Process Claim Fails ........ 12

IV. The Court Should Deny Valve Leave to Amend ........ 13

CONCLUSION ........ 13

DEFENDANT ZAIGER LLC'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS
CAUSE NO. 2:23-cv-01819

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

4859-2426-4348, v. 1

**TABLE OF AUTHORITIES**

**Cases**

*Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020)........................................ 11

*Am. Fam. Mut. Ins. Co. v. Zavala*, 302 F. Supp. 2d 1108 (D. Ariz. 2003).................................... 6

*Axiom Foods, Inc. v. Acerchem Intl., Inc.*, 874 F.3d 1064 (9th Cir. 2017).................................... 4

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) ............................ 4

*Bluestar Genomics v. Song*, 2023 WL 4843994 (N.D. Cal. May 25, 2023).................................. 4

*Bowdoin v. Oriel*, 2000 WL 134800 (E.D. Pa. Jan. 28, 2000), *aff'd*, 254 F.3d 1077 (3d Cir. 2001) ........................................................................................................................ 6

*Brennan v. Cadwell Sanford Deibert & Garry LLP*, 2021 WL 374470 (D. Nev. Feb. 2, 2021).... 5

*Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023)..................................................................... 3

*Cameron v. Downs*, 32 Wash. App. 875, 881 (1982) ........................................................... 1, 6, 8

*Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002 (9th Cir. 2011) .............................. 13

*Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wash. App. 229 (2009)............................. 7

*Esters v. Vanguard Clinical, Inc.*, 2023 WL 6930640 (S.D. Cal. Oct. 18, 2023) .......................... 5

*Giamattista v. Nat. Bank of Com. of Seattle*, 21 Wash. App. 723 (1978)...................................... 8

*Hough v. Stockbridge*, 152 Wash. App. 328 (2009) ................................................................... 12

*Kim v. HFZ 11 Beach St. LLC*, 2021 WL 4846552 (N.Y. Sup. Ct. Oct. 11, 2021)........................ 6

*Metro. Edison Co. v. NLRB*, 460 U.S. 693 (1983)....................................................................... 11

*Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014) ...................................... 8

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017) .......................................................... 5

*Olympic Fish Products, Inc. v. Lloyd*, 93 Wash.2d 596 (1980)................................................. 7, 8

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

*Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wash.2d 450 (1997) .................................... 11

*Rassamni v. Fresno Auto Spa, Inc.*, 2019 WL 2415316 (E.D. Cal. June 7, 2019) ....................... 13

*Sea-Pac Co. v. United Food & Com. Workers Local Union* 44, 103 Wash. 2d 800 (1985) ........ 12

*Uber Tech., Inc. v. American Arb. Assn., Inc.*, 204 A.D.3d 506 (N.Y. App. Div. 2022) ............. 11

*Vollendorff v. U.S.*, 951 F.2d 215 (9th Cir. 1991)............................................................................ 6

*Walden v. Fiore*, 571 U.S. 277 (2014)............................................................................................. 4

*Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985)............................................................................ 5

*Wallrich v. Samsung Elecs. Am., Inc.*, 2023 WL 5935024 (N.D. Ill. Sept. 12, 2023).................. 11

**Other Authorities**

15 U.S.C. §26......................................................................................................................... 10, 11

Washington Consumer Protection Act.......................................................................................... 10, 11

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

Valve's opposition doubles down on the Complaint's rhetoric—accusing Zaiger of "extortion" seven times—but fails to grapple with its fatal defects.[1] At bottom, Valve is suing Zaiger for zealously representing its clients. Valve says it would have a better shot at favorably resolving its customers' claims without an attorney getting in the way. Maybe. Clients often hire an attorney as their agent to level the playing field against well-heeled defendants like Valve. But that doesn't breach any provision of the SSA, and it is not an abuse of process. While accusing opposing counsel of unethical conduct, Valve's opposition ignores the language of the dispute resolution process *it insisted on* enforcing in the Wolfire Games Lawsuit. Claims like Valve's diminish the legal profession and should be dismissed.

**No Jurisdiction**. Valve's jurisdictional analysis does exactly what the case law tells courts not to do: rather than addressing Zaiger's contacts with Washington giving rise to Valve's causes of action, Valve focuses on its *own* connections to Washington. This Court lacks jurisdiction because none of Zaiger's jurisdictionally relevant conduct touches Washington.

**No Tortious Interference**. Valve concedes that an attorney cannot tortiously interfere with his own client's contract if the attorney is acting within the scope of his representation. So Valve argues that Zaiger somehow acted outside the scope of its authority. But in Washington, an agent's conduct falls within the scope of its agency if it is of the "same general nature as that authorized, or incidental to the conduct authorized." *Cameron v. Downs*, 32 Wash. App. 875, 881 (1982). Under the retainer agreement, Zaiger's clients hired the firm to investigate and file individual arbitrations asserting antitrust claims against Valve; and to negotiate on their behalf. Complaint

---

[1] This reply uses the abbreviations and conventions in Zaiger's opening brief ("**MTD**"). "**Opp.**" refers to Valve's response to Zaiger's motion (Dkt No. 20). Emphasis has been added to, and internal quotations, citations, and brackets omitted from, quoted material throughout this brief, except where indicated.

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

Ex. D ¶1. The conduct Valve complains about is not just of the "same general nature," it is *exactly* what Zaiger's clients authorized it to do.

Even if Valve alleged that Zaiger acted outside the scope of its authority (it didn't), Valve cannot articulate a coherent theory of breach. *First*, Valve invents an obligation of the SSA that doesn't exist. Valve contends that—by not allowing Valve to speak face-to-face with each customer rather than through their attorney—Zaiger refused to allow Valve and its customers to engage in the SSA's informal dispute resolution process. There is no such obligation under the SSA. *Second*, Valve claims that Zaiger's clients breached the SSA's "collective/representative arbitration" prohibition. Opp. 14. But Zaiger's clients did not file a collective or representative arbitration. ***Five*** clients filed ***five*** individual arbitrations.

**No Abuse of Process**. Valve admits that an abuse-of-process claim requires that the defendant improperly use some *legal* process separate from the commencement of an action. So Valve's contention that the legal process began *before* Zaiger commenced the arbitrations is bizarre and unsupported by any authority. Indeed, every authority Valve cites supports dismissal.

Because no amendment can save these fatal defects, the Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I. There Is No Personal Jurisdiction

What makes specific personal jurisdiction "specific" is that the *defendant's* forum-related conduct must give rise to the plaintiff's cause of action. Valve's opposition relies on (i) conduct that has nothing to do with Valve's claims; and (ii) its own contacts with Washington. Neither supports jurisdiction.



**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

**A. Retainer Agreements with Washington Clients Are Jurisdictionally Irrelevant**

Valve admits that Zaiger's internet-based advertising to potential clients is not enough to confer personal jurisdiction. Opp. 20. There must be "something more"—*i.e.*, some "suit-related conduct" by the defendant that "creates a substantial connection with the forum." *Id.* (quoting *Briskin v. Shopify, Inc.*, 87 F.4th 404, 420 (9th Cir. 2023)). The "something more," Valve says, is that Zaiger has some Washington clients. Opp. 21. But Zaiger's Washington engagements have nothing to do with Valve's tortious interference or abuse-of-process claims. None of the five clients that filed arbitrations are in Washington so they could not have breached any informal *pre-arbitration* negotiation conditions.

In response, Valve contorts its own claims beyond recognition. Even if the Washington clients did not file arbitrations, Valve says, they "are actively breaching the SSA by participating . . . in Zaiger's collective scheme." Opp. 21. This ignores the SSA and the Complaint's claimed breaches. Valve claims that Zaiger's clients breached the SSA's "informal dispute resolution procedures" in Section 11.B (¶¶ 17, 57, 58) and the SSA's prohibition on bringing "class, collective or representative arbitration[s]" in Section 11.D (¶59). Section 11.B is straightforward: users and Valve must "make reasonable, good faith efforts to informally resolve any dispute ***before initiating arbitration***." Complaint Ex. A at §11.B. So unless a user initiates arbitration ***before*** making efforts to informally resolve the dispute, the user cannot violate this provision. And Valve concedes that no Washington clients have initiated arbitration. Section 11.D is just as clear: it requires users to "agree not to ***bring or participate in*** a . . . class, collective or representative ***arbitration***." *Id.* at

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

§11.D. The Washington clients have not brought or participated in any arbitration, let alone a representative one. Zaiger's Washington clients have nothing to do with the claims alleged.[2]

**B. The Arbitration Notice Did Not Create Any Contact with Washington**

According to Valve, Zaiger's "scheme" "targeted" Valve, a Washington company, and so Zaiger knew Valve would suffer harm in Washington. Opp. 21-23. Valve's argument relies heavily on the Ninth Circuit's decision in *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000) (Opp. 22), but "*Bancroft* is no longer good law. It has been overturned by the Supreme Court's holding in *Walden* that 'mere injury to a forum resident is not a sufficient connection to the forum' and that 'the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'" *Bluestar Genomics v. Song*, 2023 WL 4843994, at *21 (N.D. Cal. May 25, 2023) (quoting *Walden v. Fiore*, 571 U.S. 277, 289-90 (2014)). Under Supreme Court precedent, Valve's approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 581 U.S. at 289.

Applying *Walden*, Zaiger's actions "did not create sufficient contacts with" Washington, "simply because [it] allegedly directed [its] conduct" at Valve, which it "knew had [Washington] connections." *Id. See also Axiom Foods, Inc. v. Acerchem Intl., Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) ("Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction . . . ."). The critical inquiry is whether Zaiger intentionally directed its conduct

---

[2] Zaiger's Washington clients have commenced no legal process, so they plainly have nothing to do with Plaintiff's abuse-of-process theory. Valve's opposition's claim that "process" can include a pre-arbitration demand is frivolous. *See* Point III, below.

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

at the forum, not whether Zaiger's directed its conduct at Valve (which happens to reside in Washington).

Valve's opposition relies on letters from Zaiger to Valve inviting Valve to negotiate the represented users' grievances in good faith (an invitation Valve refused, Marks-Dias Decl. Exs. A-F). Opp. 22. For one, Zaiger's "letters" do not (and cannot) give rise to either cause of action in the Complaint. As discussed above, there is no conceivable breach of the SSA's informal resolution provision, or class arbitration prohibition, absent a filed arbitration. And that Valve—an enormous technology company with customers worldwide—happens to reside in Washington is purely incidental. Valve must allege that Zaiger's letters not only gave rise to the Complaint's causes of action, but must have been "expressly aimed at" Washington, "rather than at [Valve] alone." *Esters v. Vanguard Clinical, Inc.*, 2023 WL 6930640, at *5 (S.D. Cal. Oct. 18, 2023). Here, Valve's alleged injury is "entirely personal" to Valve and "would follow" Valve wherever it "cho[]se to live." *Id. See also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-45 (9th Cir. 2017) (applying *Walden* in abuse-of-process claim, and finding no personal jurisdiction based on legal papers and correspondence served on in-state resident in-state, relating to out-of-state litigation, even if injury felt by, and directed towards, in-state resident); *Brennan v. Cadwell Sanford Deibert & Garry LLP*, 2021 WL 374470, at *3 (D. Nev. Feb. 2, 2021) (same); *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985) (no personal jurisdiction in malicious prosecution case when legal papers served on in-state resident).

In sum, Valve impermissibly shifts the inquiry to its own contacts with Washington. This fails to meet its burden of establishing personal jurisdiction. MTD 10-11.

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

## II. Valve's Tortious Interference Claim Fails

Valve's opposition confirms that (a) there can be no tortious interference claim because Zaiger acted within the scope of its agency; and (b) there was no actionable breach of the SSA.

### A. Zaiger Acted Within the Scope of Its Agency

Valve agrees that a "lawyer cannot tortiously interfere with their client's contract . . . when the attorney is acting as the client's agent." Opp. 9. That should end the inquiry. Attempting to avoid dismissal, Valve now argues that Zaiger somehow acted outside the scope of its agency. This tortured theory is not alleged in the Complaint and, in any events, Valve conspicuously omits Washington law's clear standard on this issue: "To be within the scope of one's agency, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Cameron v. Downs*, 32 Wash. App. 875, 881 (1982); *Vollendorff v. U.S.*, 951 F.2d 215, 219 (9th Cir. 1991) (same; applying Washington law).

Courts routinely dismiss tortious interference claims, as here, when the accused conduct falls plainly within the scope of an attorney's engagement. *See Am. Fam. Mut. Ins. Co. v. Zavala*, 302 F. Supp. 2d 1108, 1113 (D. Ariz. 2003) (attorney responsible for negotiating agreement acted within scope of engagement when refusing to provide signature pages to counterparty); *Bowdoin v. Oriel*, 2000 WL 134800, at *4 (E.D. Pa. Jan. 28, 2000), *aff'd*, 254 F.3d 1077 (3d Cir. 2001) (dismissing claims when no allegations that defendant "was acting other than as [alleged breaching party's] attorney"; "[C]learly, the attorney, if acting within the scope of his or her representation, is immune from liability for tortious interference with a client's contract"); *Kim v. HFZ 11 Beach St. LLC*, 2021 WL 4846552, at *14 (N.Y. Sup. Ct. Oct. 11, 2021) (dismissing tortious interference claim "where there is no indication that the attorney acted outside the scope of his or her authority as the party's agent").

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

Valve's tortious interference claim should be dismissed for the same reason. The Complaint fails to allege that Zaiger acted other than as its clients' agent and within the scope its engagement agreement. In the engagement letter, Zaiger agreed to "investigat[e] and, if appropriate in the attorneys' opinion, fil[e] an individual lawsuit or arbitration" against Valve. Complaint Ex. D at ¶¶1 & 3. To begin, Valve cannot possibly establish that Zaiger failed to "investigate" its clients' claims—or that its professional opinion was not "appropriate"—without piercing the privileges that cover Zaiger's prosecution of those claims. In any event, the Complaint alleges only that Zaiger is doing *exactly what it agreed to do* in its retainer agreement. The Complaint alleges that Zaiger has noticed thousands of clients' claims and has begun to file arbitrations.

Conceding there is **no** Washington authority finding lawyers liable for tortiously interfering with their clients' contracts,[3] Valve relies on inapposite Washington cases discussing whether corporate officers acting in bad faith can be personally liable for tortious interference. In *Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wash. App. 229 (2009) (Opp. 9), plaintiff sued a developer corporation and one of its officers for violating a right-of-way agreement. The court upheld a tortious interference claim against the officer, but only because he acted tortiously in his capacity as a president of a neighboring homeowners association—*not* in his role as an officer of the developer. *Id.* at 266. In this separate capacity, he could be "an intermeddler subject to liability for tortious interference." *Id. See also Olympic Fish Products, Inc. v. Lloyd*, 93 Wash. 2d 596, 600

[3] This is a good thing and reveals just how unusual Valve's action is. Were it otherwise, every action to enforce or avoid the scope of a forum selection clause—decisions typically made by an attorney—would provoke retaliatory claims against attorneys like this one.

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

(1980) (Opp. 9) (corporate officers can be liable for tortious interference only when they "***pursu[e] purely personal goals*** with no intent to benefit the corporation").[4]

Valve also complains that Zaiger would not communicate certain settlement offers to its clients. But Valve concedes that Zaiger agreed with its clients that it need "not bother" them with "settlement offers that are *de minimus*, substantially below the average amount recovered for similarly situated plaintiffs, or for gift cards, discounts or other non-cash compensation." Complaint Ex. D ¶3.[5] In sum, all the conduct Valve challenges was not only of the "same general nature as that authorized," it was specifically authorized by Zaiger's clients. *Cameron*, 32 Wash. App. at 881.[6]

**B. Valve Fails to Allege Any Breach of the SSA.**

Valve relies on two alleged breaches of the SSA by Zaiger's clients. *First*, Valve claims Zaiger did not allow its clients to "engage in the informal dispute resolution process." Opp. 13. But it leaves it to the Court to guess which terms of the SSA were breached or how. *Second*, Valve

---

[4] Even if *Olympic Fish*'s rule governing officers did apply to attorneys acting within the scope of their engagement, it would not apply to this case. There can be no dispute that Zaiger is not pursuing "purely personal goals with no intent to benefit" its clients. Valve concedes that Zaiger will retain no more than 40% of the clients' recovery. ¶47. Zaiger's goals by definition are not "purely personal"—a ***majority*** of any recovery go to its clients, not Zaiger.

[5] While objecting to their right to communicate through counsel, Valve ironically positions itself as a champion of Zaiger's clients. Valve accuses Zaiger of violating its ethical duty to keep its clients informed and present them with settlement offers. Opp. 10; Complaint ¶¶55-56. The Model Rules, however, make clear that "lawyers who receive[] . . . an offer of settlement in a civil controversy . . . must promptly inform the client of its substance ***unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer***." ABA Rule 1.4 cmt 2. Zaiger's retainer agreements, where clients have "previously indicated" that certain offers are unacceptable (Complaint Ex. D §3), present no ethical issues. Valve also ignores that Zaiger's clients "can update [their] settlement preferences anytime via the web portal or by emailing" Zaiger. *Id.*

[6] Valve also takes a swipe at litigation funding, generally, (Opp. 1-2, 10), but fails to acknowledge that such funders are entirely appropriate. *See, e.g.*, *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 718 (N.D. Ill. 2014) (rejecting challenge to litigation funding which addresses "economic inequality" at with potential award but also great risk to funder); *Giamattista v. Nat. Bank of Com, of Seattle*, 21 Wash. App. 723, 733-34 (1978) (litigation funding agreement does not run afoul of common law champerty or maintenance).

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

claims Zaiger's clients breached the SSA's bar on collective actions. This allegation is just not true. Zaiger's clients' five *individual* arbitrations cannot possibly satisfy any definition of a class or representative arbitration. Complaint Ex. A §11.D..

i. <u>Zaiger's clients did not breach any objection to engage in an information resolution process</u>

Section 11.B of the SSA requires "reasonable, good faith efforts to informally resolve any dispute before initiating arbitration." Valve does not (and cannot) dispute that upon first noticing its clients' claims on March 24, 2023, Zaiger told Valve that it was "prepared to engage in good faith discussions" on its clients' behalf; that Zaiger invited Valve to enter into a tolling agreement "in furtherance of those discussions"; and that Zaiger expressed to Valve that "[w]e look forward to hearing from you promptly." Complaint Ex. E. The Complaint does not allege that Valve accepted Zaiger's invitation to negotiate in good faith. Nor does it allege that Zaiger was somehow insincere about its willingness to have those discussions.[7]

Rather, Valve's real objection is that Zaiger's clients engaged Zaiger to negotiate on their behalf at all. Valve denies this. Opp. 13. But this is exactly what the Complaint alleges: according to Valve, Zaiger "thwart[ed]" good faith discussions by "promis[ing] Steam users that signed up as clients that they would not have to be involved with the informal dispute resolution with Valve" because Zaiger will "handle" it for them. ¶¶48-49. It next alleges that Zaiger's engagement letter does not require—as one of the enumerated "Client's Duties"—that clients *personally* engage with Valve in the informal dispute resolution process. ¶50. *See also id.* ¶64; Opp.13. It also complains

---

[7] While the communications attached to Valve's opposition should not be considered because they are not referenced or incorporated in the Complaint, these communications only *confirm* these points. Valve did not respond until 45 days after the Arbitration Notice. *See* Marks-Dias Decl. Ex. 3. Valve, not Zaiger, refused to negotiate in the 30-day pre-arbitration period.

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

that Zaiger "went out of its way to make sure Valve would not affirmatively reach out [to] its clients." ¶51.

If Valve wished to meet *personally* with Zaiger's clients before they initiated arbitration against it, it could have included a requirement in the SSA. It didn't. Its attempt to insert this term into the SSA—and argue that Zaiger's clients breached it—is improper and should be rejected.

ii. Zaiger's clients did not bring a "class" or "representative" "arbitration"

Valve argues that Zaiger's clients breached the SSA because Zaiger planned to use a few individual arbitrations to drive a collective settlement. This argument ignores the plain language of Section 11, which prohibits Steam users from participating in a "class or representative ***action***, private attorney general ***action***, whistle blower ***action*** or class, collective, or representative ***arbitration***." SSA §11.D. The Complaint does not allege the existence of any of these. Rather, the Complaint alleges that Zaiger filed "five arbitrations" on behalf "of five of its clients." ¶¶64-65; Opp. 7 ("Zaiger filed—on behalf of five clients—five ***individual arbitrations*** in September 2023."). This is *exactly* what the SSA requires.

Valve tries to salvage this claim by arguing that in the Individual Cases, "Zaiger demands injunctive relief on behalf of ***all*** of Zaiger's clients. . . ." Opp. 15. This is meritless. Yes, the injunctive relief sought in the Initial Cases, if granted, may have an effect of benefitting more than one person. But that is because Valve's illegal conduct affects more than one person. If an arbitrator enjoins Valve's anticompetitive practices on Steam with respect to Zaiger's individual clients, all Steam users may benefit (whether or not Zaiger represents them). But that does not transmogrify an individual action into a class or representative one.

In any event, as the arbitration demand Valve relies on makes clear, Zaiger's clients seek relief under 15 U.S.C. §26 and the Washington Consumer Protection Act. Marks-Dias Decl., Ex.

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

G at 14. These statutes provide ***individuals*** the right to injunctive relief for Valve's antitrust violations.[8] The SSA's collective action prohibition—which does not mention injunctive relief or these statutes—cannot waive this right. To be enforceable, contractual waivers of statutory rights must be explicit. *See, e.g., Metro. Edison Co. v. NLRB*, 460 U.S. 693, 707-709 (1983) (court "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated. More succinctly, the waiver must be clear and unmistakable."); *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wash.2d 450, 462 (1997) (same). Nothing in the SSA clearly and unmistakably waives the clients' statutory right to injunctive relief under these statutes. For these reasons, Zaiger's clients could not possibly breach the SSA by pursuing injunctive relief.[9]

And while Valve ignores the relevant authority, Zaiger's "mass arbitration" strategy is not a matter of first impression. Every court that has looked at the issue has determined that individual arbitrations, "even if by the thousands," not only do not violate class action waivers like Section 11 of the SSA, they amount to the sole "remnant of procedural rights left" to potential claimants. *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020). *See also Uber Tech., Inc. v. American Arb. Assn., Inc.*, 204 A.D.3d 506, 510 (N.Y. App. Div. 2022) (Uber obligated to pay arbitration case management fees for 31,000 nearly identical cases despite prohibition on class,

---

[8] *See* 15 U.S.C. §26 ("Any ***person*** . . . ***shall be entitled to sue for and have injunctive relief*** . . . , against threatened loss or damage by a violation of the antitrust laws . . . ."); Wash. Rev. Code Ann. §19.86.090 ("Any ***person*** who is injured . . . by a violation of [Washington's consumer protection and antitrust laws] . . . may bring a civil action … ***to enjoin further violations*** . . . .").

[9] In any event, the SSA limits the arbitrator's authority to "award relief only in favor of the individual party seeking relief and only to the extent of that party's individual claim." SSA §11.D.

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

collective or representative arbitrations); *Wallrich v. Samsung Elecs. Am., Inc.*, 2023 WL 5935024, at *13 (N.D. Ill. Sept. 12, 2023) (same, over $4 million).

**III. Valve's Abuse-of-Process Claim Fails**

Valve maintains that abuse of process can arise before process is initiated. *See* Opp. 17 (Zaiger's alleged refusal to engage in individual negotiations before arbitrations is abuse of process). This is a jarring misstatement of the law.

To begin, this is not what the Complaint alleges. The Complaint challenges the arbitrations themselves. ¶84 (abuse-of-process count; "Defendants ***brought*** collective/representative arbitration claims against Valve"). That can't be right because "there must be an act ***after*** filing suit" to maintain an abuse-of-process claim. *Sea-Pac Co. v. United Food & Com. Workers Local Union* 44, 103 Wash.2d 800, 806-07 (1985). *See* MTD at 21. And Valve doesn't bother to defend the Complaint's theory.

In any event, Valve's new theory raised in opposition is wrong, as demonstrated by its own authority. Valve conflates "a process" with "legal process." *See* Opp. 17 ("the process does *not* begin with filing an arbitration").[10] Everyone agrees there is "a process" for Zaiger's clients to follow under the SSA before commencing an arbitration. (Zaiger's clients easily satisfied it.). But that "process" is different from "legal process" for an abuse-of-process claim. As Valve's citations explain, "legal process" is "all acts of a **court** from the beginning to the end of its proceedings in a given cause." *Hough v. Stockbridge*, 152 Wash. App. 328, 346 (2009) ("depositions, motions,

---

[10] Valve claims that informal pre-arbitration discussions were part of the arbitration, so it counts as process. While wrong, Valve's argument is academic. If the allegedly improper negotiations are a part of the commencement of process, they fall under the rule that "institution of a legal proceeding even with a malicious motive does not constitute an abuse of process." *Sea-Pac*, 103 Wash. 2d at 806-07.

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

interrogatories and other requests for discovery or legal maneuverings to compel or prohibit action" may support abuse-of-process claim). Valve fails to cite a single authority holding that an abuse-of-process claim contemplates pre-litigation (or pre-arbitration) conduct. *See Rassamni v. Fresno Auto Spa, Inc.*, 2019 WL 2415316, at *2 (E.D. Cal. June 7, 2019) ("The Court is unaware of any authority suggesting pre-litigation conduct . . . can give rise to an abuse of process claim.").

If Valve's abuse-of-process claim is based on Zaiger's alleged refusal to negotiate after it started process, that too fails to state a claim. Valve cites no authority suggesting that negotiation is a process that can be abused. Again, "abuse of process extends to procedures incident to litigation"—*e.g.*, depositions, motions, discovery requests and other "tools the law affords litigants once they are in a lawsuit." *Id.* In other words, "process" involves official tools that litigants cannot ignore because a court will compel compliance. Negotiation is not a court tool, and Valve cites no law to the contrary.

**IV. The Court Should Deny Valve Leave to Amend**

"Leave to amend may be denied if the proposed amendment is futile. . . ." *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Valve's request for leave to amend articulates no new facts it could allege that would survive the infirmities of its Complaint. The Court should dismiss with prejudice.

**CONCLUSION**

For these reasons, and those set forth in Zaiger's opening papers, the case should be dismissed.

//

//

//

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

Dated this 12th day of January, 2024.

FORSBERG & UMLAUF, P.S.

By: ______________________________
Jeffrey T. Kestle, WSBA #29648
Email: jkestle@foum.law

**TUTTLE YICK LLP**
Gregory O. Tuttle
*(pro hac vice)*
Alex Banzhaf
*(pro hac vice)*
352 Seventh Avenue, 14th Floor
New York, New York 10001
(646) 833-0300

*Attorneys for Defendant Zaiger LLC*

DEFENDANT ZAIGER LLC'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS - 14
CAUSE NO. 2:23-cv-01819

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
901 FIFTH AVENUE • SUITE 1400
SEATTLE, WASHINGTON 98164
(206) 689-8500 • (206) 689-8501 FAX

4859-2426-4348, v. 1