UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>            Plaintiff,<br><br>   v.<br><br>ZAIGER, LLC and JOHN DOE CORPORATION,<br><br>            Defendant. | CASE NO. 2:23-cv-01819-JHC<br><br>ORDER GRANTING MOTION TO DISMISS (DKT. # 9) |

# I

## INTRODUCTION

This matter comes before the Court on Defendant Zaiger LLC's Motion to Dismiss. Dkt. # 9. Plaintiff Valve Corporation alleges that Zaiger, a Connecticut-based law firm, has "weaponize[d] the terms of Valve's dispute resolution agreement" and "abused the legal process and interfered with Valve's relationships with its customers." Dkt. # 1-3 at 1–2. Zaiger contends that the Court lacks personal jurisdiction, and that Valve fails to state a claim upon which relief can be granted. *See* Dkt. # 9. Because the Court lacks personal jurisdiction over Zaiger, the Court GRANTS the motion.

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 1

## II
### BACKGROUND

The factual background herein derives from the allegations in the complaint. *See* Dkt. # 1-3.

Zaiger is a law firm and a New York limited liability company with its principal place of business in Stamford, Connecticut. *Id.* at 2 ¶ 3. Valve is a Washington corporation with its principal place of business in King County, Washington. *Id.* at 1 ¶ 2. Valve operates "Steam," "an online service through which video game makers can sell and distribute their games to Steam users, who can purchase, download, and play those games through Steam." *Id.* at 2 ¶ 10. When someone becomes a Steam user, they agree to the Steam Subscriber Agreement (SSA). *Id.* at 2 ¶ 11; *id.* at 16–24 (SSA). When a Steam user has an issue with the platform that cannot be resolved through customer support, the SSA provides a dispute resolution process. *Id.* at 2–3 ¶¶ 12–14. Valve and Steam users agree to "make reasonable, good faith efforts to informally resolve" their dispute. *Id.* at 23; *id.* at 3 ¶ 17. If the parties are still unable to resolve their dispute, the Steam user may begin binding arbitration. *Id.* at 3 ¶ 20; *id.* at 22–23. According to the SSA, Valve covers the arbitration filing fees and costs "for non-frivolous, non-harassing claims seeking up to ten thousand dollars." *Id.* at 3 ¶ 21; *id.* at 23. The SSA prohibits Steam users from bringing or participating in a collective or representative arbitration. *Id.* at 23.

Valve says that Zaiger has "targeted Valve and Steam users . . . because the arbitration clause in the SSA is 'favorable' to Steam users in that Valve agrees to pay the fees and costs associated with arbitration." *Id.* at 4 ¶ 27 (citing *id.* at 26–39). Zaiger plans "to recruit 75,000 clients and threaten Valve with arbitration on behalf of those clients, thus exposing Valve to potentially millions of dollars of arbitration fees[.]" *Id.* at 5 ¶ 30. Zaiger has used internet advertisements to target Steam users. *Id.* at 6 ¶ 38.

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 2

On October 20, 2023, Valve filed this action in King County Superior Court. Dkt. # 1 at 2. On November, 27, 2023, Zaiger removed the case to federal court. *Id.* Valve alleges that Zaiger improperly interfered with the terms of the SSAs "between Valve and Zaiger's Steam user clients, specifically including the Zaiger clients for whom Zaiger has filed arbitrations." Dkt. # 1-3 at 12 ¶ 74. Valve brings two causes of action: (1) tortious interference with the "contractual relationships and business expectancies in relation to the customers of its Steam platform"; and (2) abuse of process by bringing "arbitration claims against Valve in contravention of the terms of the" SSA. *See id.* at 13–14 ¶¶ 76–86. Zaiger moves to dismiss the case under Rule 12(b)(2) and Rule 12(b)(6). Dkt. ## 9, 22. Valve opposes. Dkt. # 20.

### III
### LEGAL STANDARDS

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Unless there has been an evidentiary hearing, the plaintiff's pleadings and affidavits must "make a prima facie showing of personal jurisdiction." *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). To do so, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant[,]" *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995), but the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue*

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 3

*Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (citing Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998)). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state and federal due process are the same. *See Panavision*, 141 F.3d at 1320; RCW 4.28.185.

"Due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction."[1] *Ranza*, 793 F.3d at 1068; *see Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

Specific jurisdiction, requires that the suit "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 582 U.S. at 262 (brackets omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). That is, there must be "an affiliation between the forum and the underlying controversy[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (brackets omitted) (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).

---

[1] Valve does not claim that the Court has general jurisdiction over Zaiger. Dkt. # 20 at 19.

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 4

The Ninth Circuit employs a three-part test to determine whether a defendant is subject to specific jurisdiction. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). First, the plaintiff must show that the defendant "purposefully direct[ed]" its activities toward the forum or "purposefully avail[ed] [itself] of the privilege of conducting activities in the forum." *Id.* (quoting *Lake*, 817 F.2d at 1421). Second, the plaintiff must establish that its claim "arises out of or relates to the defendant's forum-related activities[.]" *Id.* (quoting *Lake*, 817 F.2d at 1421). If the plaintiff satisfies the first two prongs, the third shifts the burden back to the defendant to "present a compelling case" that the exercise of jurisdiction would not "comport with fair play and substantial justice," or in other words, it would be unreasonable. *Id.* (first quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); and then quoting *Lake*, 817 F.2d at 1421).

## III

### DISCUSSION

Zaiger contends that the Court lacks specific personal jurisdiction and moves to dismiss this action. Dkt. # 9 at 14–17. Valve responds that "Zaiger is subject to specific personal jurisdiction in Washington based on the Complaint's plausible allegations." Dkt. # 20 at 19.

A. Internet Advertisements

Zaiger asserts that its internet advertisements targeting aggrieved Steam users—without "something more"—do not suffice to subject it to personal jurisdiction in Washington. Dkt. # 9 at 15 (citing *Cybersell, Inc. v Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). Zaiger says that the "something more" is missing because "Valve makes no specific, nonconclusory allegations about advertisements purposefully directed at Washington." *Id.* at 15. Zaiger asserts that even if its nationwide advertising were jurisdictionally relevant, Valve's claims do not arise out of the advertising itself and specific personal jurisdiction requires a claim to arise out of a

defendant's forum-related activities.  *Id.* at 16 (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) ("the claim must be one which arises out of or relates to the defendant's forum-related activities")).  Zaiger also clarifies that while it does have clients in Washington, it has filed five arbitrations against Valve and none of those clients reside in Washington.  *Id.*; Dkt. # 11 at 2 ¶ 10; *id.* at 5–19.

Valve does not dispute that none of Zaiger's arbitration claimants are from Washington, and agrees that nationwide internet-based advertising in not enough to convey personal jurisdiction.  Dkt. # 20 at 20–21.  But Valve contends that Zaiger ignores the "numerous allegations" in the complaint that describe the requisite "something more" to establish personal jurisdiction.  *Id.* at 20 (citing *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), *reh'g en banc granted, opinion vacated,* 101 F.4th 706 (9th Cir. 2024)).  Citing *Briskin*, Valve contends that the "nature and structure" of Zaiger's "business subjects it to personal jurisdiction in Washington[,]" serving as that "something more."  *Id.* at 20–21.[2]  According to Valve, the contract-based relationships between Zaiger and its Washington resident clients confer personal jurisdiction.  *Id.* (citing *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Com. of Va. Ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950))).  Valve claims that although Zaiger's Washington clients have not yet filed arbitration claims, it has "plausibly alleged [that] Zaiger's Washington clients have breached and are actively breaching the SSA by participating . . . in Zaiger's collective scheme."  *Id.* at 21.

Zaiger replies that its "Washington engagements have nothing to do with Valve's tortious interference or abuse-of-process claims.  None of the five clients that filed arbitrations are in

---

[2] After the parties' briefing, the Ninth Circuit vacated this opinion and ordered that it be reheard en banc.  Therefore, the Court does not consider Valve's reliance on this case.  *See Briskin v. Shopify*, 101 F.4th 706 (9th Cir. 2024).

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 6

Washington so [Valve's Washington clients] could not have breached any informal *pre-arbitration* negotiation conditions." Dkt. # 22 at 7 (emphasis in original). Zaiger highlights that under the SSA, the parties must "make reasonable, good faith efforts to informally resolve any dispute before initiating arbitration," and, according to Zaiger, Valve ignores its own claims that Zaiger's clients breached the SSA's "informal dispute resolution procedures" and the SSA's prohibition on bringing "class, collective or representative arbitration." *See* Dkt. # 1-3 at 23; Dkt. # 22 at 7. Zaiger argues that its "Washington clients have not brought or participated in any arbitration, let alone a representative one" and therefore its Washington clients "have nothing to do with the claims alleged." Dkt. # 22 at 7–8.

The Court agrees with Zaiger.

> In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear,* 564 U.S., at 919 [] (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

*Bristol-Myers*, 582 U.S. at 264.

Valve's claims center on Zaiger's alleged interference with the business relationships Valve has with its Steam users and Zaiger's alleged abuse of process related to the firm's arbitration claims against Valve. Dkt. # 1-3 at 13 ¶¶ 76–82. Valve claims that Zaiger "intentionally induced and/or caused Steam users to breach their respective [SSAs]" by violating the SSA's "dispute resolution clause requiring a good-faith attempt at informal dispute resolution and individualized arbitration." *Id.* at 13 ¶¶ 78, 80. Yet the parties do not dispute that no Zaiger clients in Washington have brought arbitration claims against Valve. Although Valve asserts that it has "plausibly alleged [that] Zaiger's Washington clients have breached and are actively breaching the SSA by participating . . . in Zaiger's collective scheme[,]" the Court disagrees.

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 7

Dkt. # 20 at 21. Zaiger's decision to merely contract with Washington clients—without more—is too attenuated to constitute a breach of the SSAs or an abuse of the arbitration process. *Bristol-Myers*, 582 U.S. at 262 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (citation and internal quotations omitted).

These allegations are not enough to satisfy the second step of the Ninth Circuit specific jurisdiction test, that Valves claims arise out of or relate to the defendant's forum-related activities. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421). There is no sign that the contractual agreements Zaiger may have with its Washington clients relate to Valve's causes of action. For these reasons, Zaiger's act of contracting with clients in Washington and nationwide internet advertising campaign, do not give rise to specific jurisdiction in Washington.

B.  Individualized Targeting and Intent to Harm in Forum State

Valve contends that Zaiger targeted Valve in Washington when it sent Valve pre-arbitration letters demanding that Valve enter into settlement discussions. Dkt. # 20 at 21–22 (citing Dkt. # 1-3 at 11 ¶ 63); *see* Dkt. # 1-3 at 55–57. According to Valve, the Ninth Circuit recognizes that when a defendant sends a letter to a plaintiff demanding legal action from that plaintiff, this is sufficient "individualized targeting" to support specific personal jurisdiction. Dkt. # 20 at 22 (citing *Bancroft Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000); *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062 (1990)).

Valve also says that Zaiger's intent to cause harm in Washington alone suffices to convey specific personal jurisdiction. *Id.* (citing *Panavision*, 141 F.3d 1316 (defendant's registration of plaintiff's trademarks as domain names, plus his demand of $13,000 to release the domain names to it, were acts aimed at plaintiff in California and caused it to suffer injury there)). Valve

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 8

contends that Zaiger's "extortion scheme" aimed to target Valve in Washington and that Zaiger knew that harm to Valve would occur in the forum state. Dkt. # 20 at 23. Valve concludes that Zaiger's intent to cause harm in Washington is enough to establish specific jurisdiction.

Zaiger replies that Valve's reliance on *Bancroft*, 223 F.3d 1082, is misplaced as it is no longer good law given *Walden v. Fiore*, 571 U.S. 277, 289–90 (2014). Dkt. # 22 at 8 (citing *Bluestar Genomics v. Song*, No. 21-cv-04507-JST, 2023 WL 4843994, at *21 (N.D. Cal. May 25, 2023), *motion to certify appeal denied,* No. 21-CV-04507-JST, 2024 WL 54701 (N.D. Cal. Jan. 4, 2024)). Zaiger contends that Valve's approach, "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* (citing *Walden*, 581 U.S. at 289). Zaiger says that the critical inquiry is instead "whether Zaiger intentionally directed its conduct at the forum, not whether Zaiger directed its conduct at Valve (which happens to reside in Washington)." *Id.* at 8–9.

Zaiger asserts that Valve's reliance on any pre-arbitration letters Zaiger sent to Valve "inviting Valve to negotiate the represented users' grievances in good faith" is also misplaced. *Id.* at 9. Zaiger contends that the letters do not "give rise to either cause of action in the Complaint" because no breach of the SSA may occur without first filing an arbitration. *Id.* Zaiger says that the letters were not "expressly aimed" at the forum state, but were instead aimed at Valve. *Id.* (citing *Esters v. Vanguard Clinical, Inc.*, 2023 WL 6930640, at *5 (S.D. Cal. Oct. 18, 2023); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-45 (9th Cir. 2017)).

*Walden v. Fiore* reframed the way courts consider minimal contacts for the exercise of specific personal jurisdiction. 571 U.S. 277 (2014). There, respondents were traveling from Puerto Rico to their residences in California and Nevada; while in transit, Transportation Security Administration agents searched respondents' carry-on bags and found $97,000 in cash. *Id.* at 279–80. After boarding their connecting flight in Atlanta, Walden, an airport law

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 9

enforcement officer, seized respondents' cash and informed them that it would be returned if respondents could prove a legitimate source of the earnings. *Id.* at 280. At some point after the seizure, Walden helped draft a false probable cause affidavit for the forfeiture of the funds and forwarded that affidavit to a United States Attorney's Office in Georgia. *Id.* at 288. Respondents later filed a *Bivens* suit against Walden in Nevada, *see Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), which the district court dismissed for lack of personal jurisdiction. *Walden*, 571 U.S. at 281. The Ninth Circuit reversed, concluding that petitioner "expressly aimed" his submission of the allegedly false affidavit at the forum state by submitting the affidavit with knowledge that it would affect persons with a significant connection to Nevada. *Fiore v. Walden*, 688 F.3d 558, 581 (9th Cir. 2012), *rev'd,* 571 U.S. 277 (2014) (relying on *Bancroft*, 223 F.3d 1082 and *Metropolitan Life*, 912 F.2d 1062).

The Supreme Court reversed, holding that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285 (citing *Burger King,* 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"); *Kulko v. Superior Court of Cal., City and County of San Francisco,* 436 U.S. 84 (1978) (declining to "find personal jurisdiction in a State . . . merely because [the plaintiff in a child support action] was residing there")). The Court reasoned,

> To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. *But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.* See [*Rush v. Savchuk,* 444 U.S. 320 (1980)] ("Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum. The requirements of *International Shoe,* however, must be met as to each defendant over whom a state court exercises jurisdiction").

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 10

*Id.* at 286 (emphasis added).

The Supreme Court determined that the Ninth Circuit had thereby erred, stating that its approach

> to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because *he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections*. Such reasoning improperly *attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. See Rush*, [444 U.S. at 332]. It also obscures the reality that *none of petitioner's challenged conduct had anything to do with Nevada itself.*

*Id.* at 289 (emphasis added). "When viewed through the proper lens—whether the *defendant's* actions connect him to the *forum*—petitioner formed no jurisdictionally relevant contacts with Nevada." *Id.* Because "[p]etitioner's relevant conduct occurred entirely in Georgia, . . . the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291.

After *Walden*, the Ninth Circuit has adapted its personal jurisdiction jurisprudence, holding "that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods*, 874 F.3d at 1070 (citing *Picot*, 780 F.3d at 1214–15 (applying *Walden* to express aiming prong of purposeful direction test)).

Under the first prong of the specific personal jurisdiction test, plaintiffs must show that defendants purposefully directed their activities to the forum state. Typically, a "purposeful direction" test is applied when the claims arise from alleged tortious conduct. *Morrill*, 873 F.3d at 1142. "Purposeful direction 'requires that the defendant ... have (1) committed an intentional act, (2) *expressly aimed at the forum state*, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (emphasis added).

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 11

In *Morrill v. Scott Financial Corporation*, Morrill was an attorney who resided in Arizona and worked at a law firm in Arizona. 873 F.3d at 1139. He represented certain Nevada residents and Nevada corporations linked with a failed condominium construction project in Las Vegas, Nevada. *Id.* Morrill alleged that during this Nevada litigation, five defendants based in Nevada engaged in a campaign to harm him and his firm in retaliation for his role as counsel in the Nevada litigation. *Id.* Morrill brought claims in the District of Arizona for abuse of process and wrongful institution of civil proceedings. *Id.*

The district court dismissed the action, concluding there was no personal jurisdiction over any defendant. The Ninth Circuit then considered whether defendants' actions were purposefully directed at Arizona. On appeal, Morrill claimed that defendants "engaged in conduct that was sufficient to show that they 'committed an intentional act' expressly aimed at the forum state of Arizona." *Id.* at 1141. That conduct included: filing actions, motions, and oppositions, in Arizona, as well as "making phone calls, sending letters, mailing pleadings and discovery documents, and sending emails to [p]laintiffs in Arizona." *Id.* at 1142–43. After considering the changes ushered in by *Walden*, the Ninth Circuit determined that

> The facts of this case may not be as clear-cut as those in *Walden*: The *Walden* defendant had "never traveled to ... or sent anything or anyone to" the forum state. Here, Defendants did both. However, they did so in the course of complying with procedural requirements for advancing litigation being prosecuted entirely in another state, not as a separate action in which substantive claims were presented. Therefore, as in *Walden*, the forum state was only implicated by the happenstance of Plaintiffs' residence; if other states had procedural rules similar to those that were in place in Arizona at the time that the [Nevada litigation] was pending and Plaintiffs resided in one of them, they would have "experienced this same [alleged tortious conduct] in California, or Mississippi, or wherever else they might have [resided]."

*Morrill*, 873 F.3d at 1145–46 (citation omitted).

The Ninth Circuit concluded that its analysis does not conflict with the "well-established rule" that when a "defendant engages in tortious activity toward a plaintiff in the state where that

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 12

plaintiff resides, the defendant is subject to personal jurisdiction there." *Id.* at 1148 (citing *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258–60 (9th Cir. 1989)).

> Defendants' conduct in Arizona occurred as part of the required process for pursuing discovery and serving Plaintiffs in connection with the litigation in Nevada. The outcome would be different if, as suggested by the hypothetical presented by the dissent, an attorney had traveled to Arizona, not to appear at a hearing on a motion to quash a subpoena, but to throw a rock through the window of the Arizona residence of opposing counsel in litigation that was pending in Nevada. The reason for such inappropriate conduct could have been the animosity between counsel that resulted from their interaction during the litigation in Nevada. However, the throwing of the rock would not have been required, or in any manner justified, by the litigation process there.

*Id.*

The Ninth Circuit then held that Morrill failed to make a prima-facie showing that defendants' alleged actions were directed at the forum state, and not just directed at individuals who resided there. *Id.* at 1148–49; *see also Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) ("Because the Nevada litigation [in *Morrill*] *required* the defendants to conduct activity in Arizona (where the plaintiffs happened to reside), and the defendants thus were not in the forum state of their own volition, they had not availed themselves of the forum under the minimum contacts test.") (emphasis in original).

Here, Valve contends that demand letters sent to Valve in Washington suffice to establish that Zaiger purposefully directed its activities to Washington. But the SSA requires any "party who intends to seek arbitration must first send the other a written notice that describes the nature and basis of the claim or dispute and sets forth the relief sought." Dkt. # 1-3 at 23. Further, the letter provided to the Court states that it is a written notice of the initiation of the 30-day good faith negotiation period set forth in the SSA. *Id.* at 55. Under the SSA, if this dispute is not resolved within 30 days, the parties may commence arbitration. *Id.* at 23.

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 13

As in *Morrill*, Zaiger's letters complied with the required process for the commencement of a dispute resolution process between Valve and Steam Users. Of course, as discussed in *Morrill*, the Court's consideration would be different if Zaiger sent a letter to Washington, not to comply with the terms of the SSA, but to engage in some other type of tortious activity disconnected from its representation of Steam users. As in *Walden* and *Morrill*, Washington was only implicated by the happenstance of Valve's place of business; if Valve had been located in another state, it would have "experienced this same [alleged tortious conduct] in California, or Mississippi, or wherever else they might have" their headquarters. *Morrill*, 873 F.3d at 1145–46. Because Zaiger's conduct in Washington occurred as part of the required process for pursuing arbitration for its clients, Valve has failed to show that Zaiger's acts were directed at Washington, rather than acts directed at an entity under the SAA. *See Bluestar Genomics*, 2023 WL 4843994, at *21 ("*Bancroft* is no longer good law. It has been overturned by the Supreme Court's holding in *Walden* that 'mere injury to a forum resident is not a sufficient connection to the forum' and that 'the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'").

Further, Zaiger's alleged intent to cause harm in Washington cannot justify personal jurisdiction. Valve's reliance on a *Panavision*, 141 F.3d 1316—a case that precedes *Walden* by more than 15 years—is not compelling. In *Panavision*, the Ninth Circuit applied the "effects test" under *Calder v. Jones*, 465 U.S. 783 (1984), and held that it could properly exercise personal jurisdiction because the defendant's actions had been intentionally executed to extort money and that the defendant knew his conduct "had the effect of injuring Panavision in California where Panavision has its principal place of business[.]" *Panavision*, 141 F.3d at 1321–22. The law has evolved since *Panavision* was issued in 1998, with *Walden* narrowing the effect of the *Calder* "effects" test on the personal jurisdiction analysis. *See Walden*, 571 U.S. at

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 14

290 ("Unlike the broad publication of the forum-focused story in *Calder,* the effects of petitioner's conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction.").

As a result, whether Valve *intended* to cause harm in Washington is immaterial, "the proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." *Id.* at 291 (citations and internal quotations omitted); *cf. Axiom Foods*, 874 F.3d at 1070 ("The foreseeability of injury in a forum 'is not a "sufficient benchmark" for exercising personal jurisdiction.'") (quoting *Burger King*, 471 U.S. at 474). The Court must therefore look to Zaiger's contacts *with the forum*, not "the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 874 F.3d at 1070. And, as discussed above, because Zaiger lacks meaningful connections with Washington to confer personal jurisdiction, Valve's use of *Panavision* is unavailing.

Given the foregoing, the Court concludes that Zaiger does not have any jurisdictionally relevant contacts with Washington. Valve has therefore failed to satisfy the first two prongs of the specific jurisdiction test, *see Schwarzenegger*, 374 F.3d at 802, and the Court need not address whether Zaiger has presented a compelling case that the exercise of jurisdiction would not "comport with fair play and substantial justice[.]" *Id.*

## IV
### CONCLUSION

For these reasons, the Court GRANTS the motion, *see* Dkt. # 9, and Valve's claims are DISMISSED without prejudice.[3]

---

[3] Zaiger also seeks dismissal on the merits under Rule 12(b)(6). *See* Dkt. # 9 at 17–27. Because the Court lacks personal jurisdiction over Zaiger, the Court does not address these arguments. *Cf. Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 575 (1999) ("Personal jurisdiction . . . is an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication.") (citing *Emps. Reinsurance Corp. v. Bryant,* 299 U.S. 374 (1937)).

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 15

Dated this 20th day of August, 2024.

*John H. Chun*
John H. Chun
United States District Judge

ORDER GRANTING MOTION TO DISMISS (DKT. # 9) - 16